Green, J.
delivered the opinion of the court.
A bill single was executed by Edwin A. Reaves and Thomas Stewart, to Henry Bridges, in the following words:
“$300. On or before the 25th day of December next, we or either of us promise to pay to Henry Bridges, or order, three hundred dollars, for value received, as witness our hands and seals, this 29th of July, 1841. Edwin A. Reaves. [Seal.] Thos. Stuart. [Seal.]”
Upon this note are the following assignments: “I assign the within note to Thomas H. Bradley, and guaranty the same without notice or demand as tbe law requires. July 29, ’41. H. Beid&es.” “I assign the within note to R. &S. Graham, *477 and guaranty the payment at the insolvency of the drawer, Oct. 9, ’41. T. H. Bradley.”
The plaintiffs proved that they issued writs against Stuart and Reaves, the drawers of the bill single, the 4th of July, 1842, returnable to the July term, 1842. Said writ was returned executed on Stuart and not found as. to Reaves. A nolle prose-qui as to Reaves was entered, and at the November term of the court a judgment was obtained against Stuart, and an execution was issued during the term, upon a special order, and the sum of $61 00 was all the money the sheriff could make by virtue thereof.
On the 31st of December, 1842, Reaves paid $190 50, and of the sum of $61, made on the execution against Stuart, the plaintiffs received $49 11 cents. The note thus reduced was put in the hands of a constable in the spring of 1843, and on the 13th day of May, 1843, a judgment was obtained before a Justice of the Peace, against Reaves, for $80 77 cents, the balance due thereon, upon’which judgment an execution was issued, and was returned “no property found.”
If a judgment had been obtained against Stuart at the July term, 1842, of the court, the money could have been made out of his property. Reaves was also solvent in the fall of 1842, and continued solvent until January, 1843. The court charged the jury, “that the legal effect of the endorsement relied on by the plaintiffs was to impose on them a resort in the first instance to the makers of the note; that it was incumbent on the plaintiffs to show that they had instituted suit against the makers, returnable to the first term after the note fell due; that they prosecuted said suit to judgment, and that the writ of fieri facias issuing upon such judgment had been returned nulla bona, before they could be entitled to recover against the defendant.”
The jury found for the defendant. The plaintiffs moved for a new trial, which was overruled, and they appealed to this court.
It is insisted by the counsel for the plaintiff in error, with lintch earnestness and ingenuity of reasoning, that the guaranty *478 in this case is an absolute undertaking to pay tiie money called for in the note, whenever it may be made to appear that the makers were insolvent. The guaranty is in these words: “I assign the within note to R. & S. Graham, and guaranty the payment at the insolvency of the drawers.” Now, according to the argument, if the holders of the note had chosen to delay ten years any proceedings against the drawers, to establish their insolvency, the guarantor would be bound to pay the money whenever that insolvency might happen. This would place him in a much worse condition than if it were a guaranty of payment whén due. For, according to the argument, the holders might have stipulated for delay with the drawers, and the guarantor would be without remedy: he had bound himself at all events to pay the money when the makers should become insolvent; for five or ten years he could avail himself of no de-fence, arising from a stipulation. for delay in the intermediate time. This could not have been the meaning of the parties. The defendant guarantees the payment at the insolvency of the drawers. This language is awkwardly employed; but it means, that he guarantees the solvency of the drawers. If this is not the meaning, why introduce the word insolvency at all? He thereby postpones the fulfilment of his own engagement in such a way that, if the argument is sound, he could not, under the statute, hasten the collection by giving notice to the holders to sue the makers. The evident meaning, in making the engagement of the guarantors to depend upon the insolvency of the makers was, that he would pay if the money could not be collected from the drawers. This would amount to a guaranty of their solvency, and would bind the holders to reasonable diligence in the collection of the note.
. 2nd. But it is said, if this be the correct construction of the guaranty, his honor the Circuit Judge erred in telling the jury “that it was incumbent upon the plaintiffs to show that they had instituted suit against the obligors, returnable to the first term after the note fell due.” The bond fell due 25th December, 3841: the first term of the court was in March, and suit was not instituted until the 4th of July, 1842.
*479 Manifestly the holders did not use reasonable diligence. There were two months and a half from the time the note fell due, until the first term of the court. • Reasonable diligence in the collection of the note would have induced the commencement of the suit returnable to March term. What is reasonable diligence is a question of law for the court to decide. His honor should have said, “If the jury find the fact to be, that the note was due the 25th December, and that the first term of the court was in March, the plaintiffs were bound, in the reasonable exercise of diligence, to have commenced their suit returnable to the first term.” This would have been in more exact conformity with our theory of the duty of the Judge and of the jury.
But as we see that these facts were thus plainly shown by \ record of the suit, and could not have been found by the jury otherwise, and as another trial would necessarily result in a similar verdict, thejustice of the law having been attained, we do not think we ought to reverse the judgment merely because the Judge assumes the existence of these facts, which, strictly, he should have left to the jury to find, there being no error in the statement of the law.
Affirm the judgment.